IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **LARRY HOWELL, # K-89663,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 16-cv-00160-SMY |
| ) | |
| **SALVADOR A. GODINES,** ) | |
| **LOUIS SHICKER,** ) | |
| **KIMBERLY BUTLER,** ) | |
| **JOHN TROST,** ) | |
| **DR. FUENTES,** ) | |
| **SUSAN KIRK,** ) | |
| **SERGEANT TINDELL,** ) | |
| **SERGEANT BRADLEY and** ) | |
| **WEXFORD HEALTH SOURCE, INC.,** ) | |
| ) | |
| **Defendants.** ) | |

## **MEMORANDUM AND ORDER**

**YANDLE, District Judge:**

Plaintiff Larry Howell is currently incarcerated at Menard Correctional Center ("Menard"). He brings this action pursuant to 42 U.S.C. § 1983 for alleged violations of his constitutional rights at Menard. According to his Complaint, Plaintiff injured his knee while playing basketball at Menard on May 4, 2014 (Doc. 1). Although surgery and physical therapy were recommended, Plaintiff was denied both (Doc. 1 at 5-33). He was also denied the use of a wheelchair, walker or cane (*Id*.). Plaintiff now sues the following prison officials for violating his rights under the Eighth Amendment: Salvador Godines (Illinois Department of Corrections' ("IDOC") Director), Louis Shicker (IDOC Chief Medical Director) Kimberly Butler (prison warden), John Trost (prison medical director), Doctor Fuentes (prison physician), Susan Kirk (prison nurse), Sergeant Tindell and Sergeant Bradley. Plaintiff seeks declaratory judgment, monetary damages and injunctive relief (*Id*. at 37).

This case is before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under § 1915A, the Court is required to promptly screen prisoner Complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). The Court is required to dismiss any portion of the Complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b). Plaintiff's Complaint survives review under this standard.

## The Complaint

Plaintiff fell and injured his knee while playing basketball in Menard's gymnasium on May 4, 2014 (Doc. 1 at 7-21). He was examined the following day by Doctor Trost, the prison's chief medical director. Doctor Trost ordered an x-ray of Plaintiff's knee. Although it revealed no fracture, the x-ray showed a tremendous amount of fluid and inflammation. To further assess the injury, Doctor Trost recommended an MRI.

Plaintiff waited almost two months for this diagnostic test. While waiting, he suffered from excruciating pain and loss of mobility. Doctors Trost and Fuentes ordered ibuprofen for pain, a bandage for support and ice for the swelling. Plaintiff was issued several medical lay-in permits and a slow walk permit.

At times, he was even provided with a wheelchair. More often, he was denied the use of any assistive devices (*i.e.*, wheelchair, walker, cane, or other device). He was housed in a fifth floor cell and prison officials, including Sergeants Tindell and Bradley, forced him to walk from place to place under the threat of disciplinary action or cancelled medical appointments. Plaintiff resorted to hopping on one foot across the floor, scooting on his bottom down stairs and relying on other inmates to assist him. As a result, he suffered additional pain and further injuries.

Plaintiff underwent an MRI on July 1, 2014. Doctor Trost reviewed the test results with him two weeks later. He was diagnosed with a torn anterior cruciate ligament ("ACL") and a damaged meniscus (*Id*. at 14). Doctor Trost indicated that knee surgery and physical therapy were necessary. The doctor submitted a request for surgical repair of the ACL and meniscus to the "collegial board." Plaintiff was also referred to an orthopedist for a consultation on August 27, 2014 and the specialist's report was forwarded to the collegial board approximately three weeks later (*Id*. at 15). On September 17, 2014, after reviewing Plaintiff's case, the board approved the request for knee surgery.

Plaintiff underwent surgery on October 7, 2014, more than five months after his injury occurred (*Id*. at 16). While awaiting surgery, he continued to suffer from pain and loss of mobility. Following surgery, these symptoms did not fully subside. Plaintiff continued suffering from knee pain and difficulty walking. He complained about the persistent symptoms at a follow-up appointment with Doctor Trost on October 23, 2014. It was only then that Doctor Trost explained that Plaintiff's meniscus was repaired during surgery, but his torn ACL was not. The collegial board would not approve the request for ACL surgery because Plaintiff would also need up to eight months of physical therapy, which Menard could not provide (*Id*. at 16-17).

Between October 2014 and December 2015, Plaintiff continued to request ACL surgery and physical therapy. Doctor Trost repeatedly submitted Plaintiff's case for review before the collegial board. The board denied all requests for ACL surgery and physical therapy. Plaintiff ultimately received only one appointment with an outside physical therapist.

Plaintiff now sues the defendants under the Eighth Amendment for responding to his injury with deliberate indifference. He claims that IDOC Director Godines knew Plaintiff was denied surgery, physical therapy and assistive devices based on detailed grievances and appeals

he received in connection with Plaintiff's case, but the director failed to correct the policies, customs, or practices that resulted in the constitutional deprivations (*Id.* at 26); IDOC Medical Director Shicker failed to intervene on Plaintiff's behalf and overturn the decisions of the collegial board despite having knowledge of Plaintiff's injury, ongoing symptoms and need for assistive devices (*Id*. at 24-25); Warden Butler knew of the denial of medical care and assistive devices, but failed to intervene on Plaintiff's behalf (*Id*. at 22); Doctors Trost and Fuentes failed to secure necessary treatment and assistive devices for Plaintiff (*Id*. at 23, 27-29); Nurse Kirk ignored Plaintiff's numerous sick call requests and refused to call him to the HCU (*Id*. at 19-20, 23, 30); Sergeants Tindell and Bradley denied Plaintiff access to assistive devices and forced him to "walk" everywhere, despite causing further injuries and pain (*Id*. at 22, 30-33); and, in an effort to reduce costs, Wexford failed to correct the policies, customs, and practices that led to the denial of adequate medical care and also failed to properly train medical staff to treat such injuries (*Id*. at 29).  Plaintiff now seeks declaratory judgment, monetary damages and injunctive relief that includes ACL surgery[1] (Doc. 1 at 37).

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the Court deems it appropriate to organize the claims in Plaintiff's *pro se* Complaint into the following counts:

> **Count 1:    Defendants exhibited deliberate indifference toward Plaintiff's serious medical needs, in violation of the Eighth Amendment, when they delayed and/or denied appropriate treatment for his knee injury.**

---

[1] Plaintiff does seek any sort of immediate relief, in the form of a temporary restraining order ("TRO") or preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure.  If he feels that either a TRO or a preliminary injunction is necessary, Plaintiff may file a motion for said relief at any time during the pending action.

      **Count 2:**    Defendants subjected Plaintiff to unconstitutional conditions of confinement at Menard, in violation of the Eighth Amendment, when they placed him in a fifth floor cell and denied him the use of any assistive medical devices when he was unable to walk.

      **Count 3:**    Defendants violated the Americans with Disabilities Act ("ADA") and/or Rehabilitation Act when they denied him the use of any assistive medical devices while he was unable to walk, thereby denying him access to meals and medical services.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

## Merits Review Under 28 U.S.C. § 1915A

### Count 1 – Medical Needs

The Complaint states a valid Eighth Amendment claim (**Count 1**) against all of the defendants. Prison officials violate the Eighth Amendment when they are deliberately indifferent to a prisoner's serious medical needs. *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). This amendment "safeguards the prisoner against a lack of medical care that 'may result in pain and suffering which no one suggests would serve any penological purpose.'" *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015) (citing *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009) (quoting *Estelle*, 429 U.S. at 103).

An Eighth Amendment medical claim includes an objective and a subjective component. To satisfy the objective component, a prisoner must demonstrate that his medical condition is "objectively, sufficiently serious." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). A medical condition is considered

objectively serious if it has been diagnosed by a physician as requiring treatment or would be obvious to a layperson. *See Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (citing *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009)). Plaintiff's torn ACL and damaged meniscus satisfy this standard for screening purposes. Both injuries were diagnosed by a physician as requiring surgery.

The subjective component requires a prisoner to demonstrate that prison officials acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834; *Greeno*, 414 F.3d at 653. Specifically, the officials "must know of and disregard an excessive risk to inmate health." *Greeno*, 414 F.3d at 653. They must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and "must also draw the inference." *Id.* (quoting *Farmer*, 511 U.S. at 837). Here, the Complaint also includes allegations that satisfy the subjective component of this claim with respect to each defendant.

**1.      Prison Doctors**

According to the Complaint, the prison's physicians, Doctors Trost and Fuentes, have failed to provide Plaintiff with adequate medical care for his knee injury since May 2014. These doctors treated Plaintiff with ibuprofen for pain, ice for swelling and a bandage/knee sleeve for support. However, they delayed an MRI for nearly two months and surgery on Plaintiff's meniscus for more than five months. To date, Plaintiff has not received ACL surgery, physical therapy or regular use of any assistive devices.

Deliberate indifference can occur even when *some* medical care has been provided. The "receipt of some medical care does not automatically defeat a claim of deliberate indifference." *Perez*, 792 F.3d at 777 (citing *Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007)). *See also Arnett*, 658 F.3d at 751 (prisoner need not show that his medical needs were

literally ignored). The standard is satisfied if the physician acts in a manner that is "contrary to the recommendation of specialists" or "delays a prisoner's treatment for non-medical reasons, thereby exacerbating his pain and suffering." *Perez*, 792 F.3d at 777 (citing *Arnett*, 658 F.3d at 753; *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010)). This is essentially what Plaintiff alleges in his Complaint. Accordingly, the Court will allow Plaintiff to pursue his deliberate indifference to medical needs claim against Doctors Trost and Fuentes.

**2.      Nurse**

Plaintiff may also proceed with this claim against Nurse Kirk, who ignored his numerous requests to be seen in the HCU. Although "nurses may generally defer to instructions given by physicians, they have an independent duty to ensure that inmates receive constitutionally adequate care." *Perez*, 792 F.3d at 779 (7th Cir. 2015) (citing *Berry v. Peterman*, 604 F.3d 435, 443 (7th Cir. 2010)). When confronted with a questionable practice or clearly inappropriate treatment, a nurse has a professional obligation to "take appropriate action" by discussing the nurse's concerns with the treating physician or contacting a supervisor. *Id*. Plaintiff alleges that Nurse Kirk ignored his sick call requests and refused to schedule appointments for him in the HCU after reviewing his medical records. At the time, she was allegedly aware that treatment of his knee injury was delayed or denied. Perhaps she discussed her concerns with her supervisor, but at this stage, the Court cannot tell and therefore cannot dismiss this claim against her. Therefore, Count 1 shall proceed against Nurse Kirk.

**3.      Sergeants**

Likewise, this claim survives threshold review against the two sergeants, Tindell and Bradley, who forced Plaintiff to hop and scoot around the prison when he was unable to walk. Both sergeants were aware of Plaintiff's injuries and associated pain at the time. Plaintiff alleges

that he suffered further injuries and pain as a result. Accordingly, Count 1 shall receive further review against Sergeants Tindell and Bradley.

**4.     Wexford**

Likewise, Count 1 shall proceed against Wexford, which is a private corporation that serves as Menard's healthcare provider. In the Seventh Circuit, a private corporation generally cannot be held liable under § 1983, unless it maintained an unconstitutional policy or custom. *Perez*, 792 F.3d at 780 (citing *Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2014)). According to the Complaint, Plaintiff was repeatedly denied testing and treatment because of Wexford's cost-saving policies, customs and practices that include a failure to train medical staff on the appropriate treatment of knee injuries. Drawing all reasonable inferences in Plaintiff's favor as this Court is required to do at screening, the Complaint sufficiently alleges that Wexford maintained an unconstitutional cost-saving policy, custom or practice that resulted in the denial of Plaintiff's ACL surgery, physical therapy and medical assistive devices. *Thulin v. Shopko Stores Operating Co., LLC*, 771 F.3d 994, 997 (7th Cir. 2014). As such, Count 1 cannot be dismissed against Wexford.

**5.     Grievance Defendants**

Count 1 shall also receive further review against Warden Butler, IDOC Director Godines and IDOC Medical Director Shicker ("grievance defendants"), who received and reviewed the grievances and appeals filed in connection with Plaintiff's knee injury. All three defendants failed to intervene and stop the alleged violation of Plaintiff's constitutional rights, after being made aware of his lack of medical care. Their inaction allegedly prolonged Plaintiff's pain and suffering.

Under § 1983, a government official may only be held liable for his or her own

misconduct. *Locke v. Hoessig*, 788 F.3d 663, 669 (7th Cir. 2015). In order to recover damages against a prison official who is acting in a supervisory role, a § 1983 plaintiff cannot rely on a theory of *respondeat superior*, or supervisory liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). He must allege facts which tend to show that the supervisory official realized a substantial risk of serious harm to the prisoner existed and disregarded it. *Farmer*, 511 U.S. at 837. Where an official "knows about unconstitutional conduct and facilitates, approves, condones, or 'turn[s] a blind eye' to it," the official may be liable for deliberate indifference under the Eighth Amendment. *Perez*, 792 F.3d at 768 (citing *Vance v. Peters*, 97 F.3d 987, 992-93 (7th Cir. 1996) (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)).

In this case, Plaintiff alleges that Warden Butler, Medical Director Shicker and Director Godines were aware of a Plaintiff's serious, untreated injury and the decision to deny his request for surgery. They each disregarded the risk of harm to him. At this stage, the Court will allow Count 1 to proceed against the grievance defendants.

### Count 2 – Conditions of Confinement

In order to state a claim for unconstitutional conditions of confinement, a plaintiff must allege facts that, if true, would also satisfy the objective and subjective components applicable to all Eighth Amendment claims. *McNeil v. Lane*, 16 F.3d 123, 124 (7th Cir. 1994); *Wilson v. Seiter*, 501 U.S. 294, 302 (1991). In this context, the objective component focuses on the nature of the acts or practices alleged to constitute cruel and unusual punishment. *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992). The objective analysis turns on whether the conditions of confinement exceeded contemporary bounds of decency of a mature civilized society. *Id.* The condition must result in unquestioned and serious deprivations of basic human

needs or deprive inmates of the minimal civilized measure of life's necessities. *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981).

Not all prison conditions trigger Eighth Amendment scrutiny—only deprivations of basic human needs like food, medical care, sanitation and physical safety. *Rhodes,* 452 U.S. at 346; s*ee also James v. Milwaukee County*, 956 F.2d 696, 699 (7th Cir. 1992). "Some conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise-for example, a low cell temperature at night combined with a failure to issue blankets." *Wilson,* 501 U.S. at 304. In this case, Plaintiff was placed in a fifth floor cell, despite his inability to walk. He was denied access to a wheelchair, cane, walker or other device. He had to hop, scoot and beg to get anywhere in the prison. As a result, he missed scheduled meals and medical appointments, among other things.

The defendants were aware of these conditions. Plaintiff complained directly to them and filed grievances to address his concerns. Still, they took no action to address the situation, either by moving him to a lower level cell or offering him the use of assistive medical devices. *See, e.g., Farmer*, 511 U.S. at 837; *Wilson*, 501 U.S. at 303; *Estelle*, 429 U.S. at 104; *Del Raine v. Williford*, 32 F.3d 1024, 1032 (7th Cir. 1994) (deliberate indifference shown where official is aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and the official draws the inference). The allegations in the Complaint support a claim for unconstitutional conditions of confinement against the defendants at this early stage. Accordingly, **Count 2** shall receive further review against them.

### Count 3 – ADA/Rehabilitation Act

Based on the Complaint allegations, the Court will allow Plaintiff to proceed with a claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Rehabilitation Act, 29 U.S.C. §§ 794-94e.[2]  The ADA provides that "no qualified individual with a disability shall, because of that disability . . . be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132 (2006).  The Rehabilitation Act also prohibits discrimination against qualified individuals based on a physical or mental disability.  *See* 29 U.S.C. §§ 794-94e.  Discrimination under both includes the failure to accommodate a disability.

However, this claim cannot proceed against the individual defendants. Individual employees of the IDOC cannot be sued under the ADA or Rehabilitation Act.  *Jaros*, 684 F.3d at 670.  The proper defendant is the relevant state department or agency.  *See* 42 U.S.C. § 12131(1)(b); *Jaros*, 684 F.3d at 670 n. 2 (individual capacity claims are not available; the proper defendant is the agency or its director (in his official capacity)).  Plaintiff has named Director Godines as a defendant and **Count 3** shall proceed against Defendant Godines in his official capacity.

### Pending Motion

Plaintiff filed a motion for recruitment of counsel (Doc. 3) which shall be referred to United States Magistrate Judge **Philip M. Frazier** for a decision.

---

[2] Plaintiff does not explicitly raise a claim under the ADA or Rehabilitation Act.  However, at this early stage in litigation, the Court must consider all of the litigant's claims and not just the particular legal theories he propounds, particularly when he is litigating *pro se*.  For this reason, the Court now analyzes the disability-related claim under both the ADA and the Rehabilitation Act.  *See Norfleet v. Walker*, 684 F.3d 688, 690 (7th Cir. 2012); *Jaros v. Illinois Dept. of Corrections*, 684 F.3d 667 (7th Cir. 2012).

### Disposition

**IT IS HEREBY ORDERED** that **COUNTS 1** and **2** shall receive further review against Defendants **GODINES, SHICKER, BUTLER, TROST, FUENTES, KIRK, TINDELL, BRADLEY** and **WEXFORD HEALTH SOURCE, INC.**, and **COUNT 3** shall only proceed against Defendant **GODINES in his official capacity**.

**IT IS ORDERED** that with regard to **COUNTS 1, 2** and **3**, the Clerk shall prepare for Defendants **GODINES, SHICKER, BUTLER, TROST, FUENTES, KIRK, TINDELL, BRADLEY** and **WEXFORD HEALTH SOURCE, INC.**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court.

Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel.  Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Philip M. Frazier** for further pre-trial proceedings, including a decision on the motion for recruitment of counsel (Doc. 3), pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.* Further, this entire matter shall be **REFERRED** to United States Magistrate Judge **Frazier** for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, regardless of the fact that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk

of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: March 21, 2016**

s/ STACI M. YANDLE
**STACI M. YANDLE**
**United States District Judge**
