IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

LARRY HOWELL, )
)
    Plaintiff, )
)
v. ) Case No. 16-cv-160-RJD
)
WEXFORD HEALTH SOURCES, INC. and )
DR. JOHN TROST, )
)
    Defendants. )

**ORDER**

**DALY, Magistrate Judge:**

Plaintiff Larry Howell filed this lawsuit pursuant to 42 U.S.C. § 1983 alleging his constitutional rights were violated while he was in the custody of the Illinois Department of Corrections ("IDOC"), incarcerated at Menard Correctional Center. Plaintiff alleges he was provided inadequate medical treatment for an injury he sustained to his knee on May 4, 2014. Plaintiff proceeded to trial on an Eighth Amendment claim of deliberate indifference against Defendant Dr. John Trost and Wexford Health Sources, Inc. ("Wexford").

A trial in this matter was held on September 10 and September 11, 2019. The jury rendered a verdict in favor of Dr. John Trost and against Wexford in the amount of $25,000. Prior to the jury rendering its verdict, Defendants submitted an oral motion for a directed verdict at the close of Plaintiff's evidence and at the close of all evidence. The Court denied Defendants' motions as to Dr. John Trost, granted the motions on the issue of punitive damages, and took them under advisement as to Defendant Wexford. Defendants filed their motions for directed verdict following receipt of the jury verdict, as directed by the Court (Docs. 157 and 158). The Court construes Defendants' motions as renewed motions for judgment as a matter of law pursuant to

Federal Rule of Civil Procedure 50(b). Plaintiff has filed a response in opposition to the motions. In light of the Court's previous rulings and the jury verdict, the only issue remaining before the Court is the Rule 50 motion as to Defendant Wexford.

## Legal Standard

A motion for judgment as a matter of law made during trial, which is not granted by the court, may be renewed pursuant to Federal Rule of Civil Procedure 50(b). The determining court has three options when ruling on a Rule 50(b) motion: it may allow judgment on the verdict to remain, order a new trial, or direct the entry of judgment as a matter of law in favor of the movant. FED. R. CIV. P. 50(b).

A Rule 50(b) motion should be granted only when a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue. FED. R. CIV. P. 50(a); *see Murray v. Chicago Transit Auth.*, 252 F.3d 880, 886 (7th Cir. 2001). In reviewing a party's motion, the court must construe "the evidence strictly in favor of the party who prevailed before the jury and examine[] the evidence only to determine whether the jury's verdict could reasonably be based on that evidence." *Passananti v. Cook County*, 689 F.3d 655, 659 (7th Cir. 2012) (citations omitted). The court will not make credibility determinations or weigh the evidence. *Id.* The Seventh Circuit has remarked that "overturning a jury verdict is not something [the court] do[es] lightly," *Massey v. Blue Cross-Blue Shield of Ill.*, 226 F.3d 922, 925 (7th Cir. 2000), and it will only do so if the moving party can show that no rational jury could have brought in a verdict against it. *Hossack v. Floor Covering Associates of Joliet, Inc.*, 492 F.3d 853, 859 (7th Cir. 2007) (citations omitted).

## Discussion

Wexford asserts it is entitled to judgment as a matter of law because Plaintiff failed to prove that its policies or procedures caused or contributed to Plaintiff's injuries or damages. Wexford also asserts that a reasonable jury could not have a legally sufficient evidentiary basis to find that Wexford had a widespread policy that resulted in delayed medical care for Plaintiff's serious medical need.

Plaintiff contends there was evidence demonstrating Wexford had a custom and practice of disregarding its written guidelines concerning knee injuries and disregarding its alleged policy of relying on the clinical judgment of its medical providers that resulted in his suffering a constitutional deprivation. Plaintiff further posits there was evidence demonstrating multiple denials and repeated actions taken by Wexford through its collegial review that established a pattern or practice sufficient to demonstrate deliberate indifference.

In order for Plaintiff to recover on his policy claim against Defendant Wexford, he must offer evidence that his injury was caused by a policy, custom, or practice of deliberate indifference to medical needs, or a series of bad acts that together raise the inference of such a policy, that was implemented by Wexford. *Shields v. Illinois Dep't of Corr.*, 746 F.3d 782, 796 (7th Cir. 2014). Plaintiff must also show that Wexford was aware of the risk created by the custom or practice and must have failed to take appropriate steps to protect him. *Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2009). Finally, the policy or practice "must be the 'direct cause' or 'moving force' behind the constitutional violation." *Woodward v. Correctional Medical Services of Illinois, Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) (internal citations omitted).

Plaintiff asserts that the evidence presented was sufficient to demonstrate Wexford had a pattern of practice of ignoring the clinical judgment of its clinicians and disregarding its written

guidelines concerning knee injuries through the use of its collegial review board, which resulted in deliberate indifference to Plaintiff's knee injury. In support of this position, Plaintiff asserts Dr. Trost's requests for a referral to an outside specialist were denied on six occasions, and Wexford made no attempt to comply with Dr. Koth's request for a follow-up visit. In his response, Plaintiff references the Seventh Circuit's decision in *Glisson v. Indiana Dep't Corr.*, 849 F.3d 372 (7th Cir. 2017), wherein the Court reiterated that a corporation may be held liable if it fails to implement a policy in "situations where rules or regulations are required to remedy a potentially dangerous practice." *Glisson*, 849 F.3d at 381 (internal quotations omitted). In *Glisson*, the Court noted that institutional liability "can be proven in a number of ways, including but not limited to repeated actions." *Id.* The Court explained that "[a] single memo or decision showing that the choice not to act is deliberate" may establish liability under *Monell*. *Id.*

Plaintiff seems to rely on *Glisson* to support his argument that the collegial review process reflected a practice of intentionally ignoring Wexford's policy to rely on the sound clinical judgment of its clinicians in determining patient care. In other words, Plaintiff contends Wexford's collegial review process was employed to contradict the recommendations of patients', including Plaintiff's, treating providers, resulting in delayed care. Plaintiff, however, did not present sufficient evidence for a reasonable jury to conclude that the denials that occurred in this case reflected a practice attributable to Wexford to sustain liability under *Monell*. Notably, the circumstances here are distinguishable from *Glisson*, and clearly analogous to the line of cases requiring evidence of more than one constitutional violation to evidence liability under *Monell*. In particular, unlike *Glisson*, this is not a case where the evidence establishes Wexford failed to implement a policy despite being directed to do so, and despite having actual knowledge that its failure to implement a policy could violate an inmate's constitutional rights. Indeed, Wexford

clearly had a policy that required a collegial review for approval to outside providers, at least in non-emergent situations. The issue in this case is unlike *Glisson* as there is no evidence that any harm befell Plaintiff due to Wexford's failure to adopt a policy. This is also not a case where the "possibility of harm from a custom or practice may be so obvious that evidence of a series of prior injuries is not needed to support an inference of deliberate indifference." *Catham v. Davis*, 839 F.3d 679, 685 (7th Cir. 2016). The collegial review process is not, on its face, unconstitutional. Further, this is not an instance where the likelihood of recurring constitutional violations is an obvious or "highly predictable consequence" of Wexford's policy choice. *Board of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 409 (1997). Indeed, the use of a collegial review, or utilization management program, is a tool routinely employed by insurance companies (*see* Doc. 162 at 133).

As mentioned above, the circumstances concerning Wexford's collegial review are akin to the line of cases in this Circuit that require evidence of more than one constitutional injury traceable to the policy or custom to sustain liability under *Monell*. *See, e.g., Chatham v. Davis*, 839 F.3d 679, 685 (7th Cir. 2016) (finding insufficient evidence that Wexford's failure to fill the permanent medical-director position was attributable to a custom or practice); *Daniel v. Cook Cnty.*, 833 F.3d 728, 734 (7th Cir. 2016) (explaining that a *Monell* plaintiff "must show more than the deficiencies specific to his own experience"); *Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005) (explaining that claims about express policies that fail to address certain issues, and claims about widespread practices that are not tethered to a particular written policy require more evidence than a single incident to establish liability). Here, there was evidence that the collegial review process was utilized to assess Plaintiff's treating provider's recommendation for an outside referral. There is also evidence that Dr. Trost's requests for a referral were denied on three

occasions (Doc. 161 at 37, 43, 45-46). The record is devoid, however, of any evidence that Plaintiff's experience with the collegial review process was widespread or systemic. Indeed, no evidence concerning any other denials by the collegial review board were introduced at trial. As such, there is no evidence that the denials in this instance were attributable to a policy or practice of Wexford rather than the actions of certain individuals. Accordingly, even when all of the evidence is considered in the light most favorable to Plaintiff, Plaintiff failed to establish that his injury was caused by a policy, custom, or practice of deliberate indifference implemented or maintained by Wexford. The jury's verdict on Plaintiff's claim of deliberate indifference against Wexford was not supported by the evidence introduced at trial and cannot stand. Judgment must be entered in favor of Defendant Wexford Health Sources, Inc.

## Conclusion

As a matter of law, the evidence presented at trial was insufficient to allow any rational jury to find in favor of Plaintiff and against Wexford Health Sources, Inc. A new trial is unnecessary as Plaintiff failed to prove his claim as a matter of law. Judgment shall be entered in favor of Defendants on all counts. Defendants' renewed motion for judgment as a matter of law at the close of Plaintiff's evidence (Doc. 158) is **GRANTED** as to Defendant Wexford and **FOUND AS MOOT** as to the issue of punitive damages and Defendant Dr. Trost. Defendant's renewed motion for judgment as a matter of law at the close of all evidence (Doc. 157) is **MOOT**.

**IT IS SO ORDERED.**

**DATED: October 9, 2019**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**